## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JASON ABDUS-SABUR**,<br>3000 McComas Ave.<br>Kensington, MD 20895<br><br>        Plaintiff,<br><br>   v.<br>**HOPE VILLAGE, INC.**,<br>2840 Langston Place, S.E.<br>Washington, D.C. 20020,<br><br>**CORRECTIONS CORPORATION<br>OF AMERICA**,<br>1901 E Street, S.E.<br>Washington, DC 20003,<br><br>        and<br><br>**D.C. DEPARTMENT OF CORRECTIONS**,<br>2000 14th Street, N.W<br>Washington, DC 20009,<br><br>        Defendants. | Civil Action No.  16-cv-156<br><br>Jury Demand |

## COMPLAINT

Plaintiff Jason Abdus-Sabur ("Mr. Abdus-Sabur" or "Plaintiff") brings this Complaint against Hope Village, Inc. ("Hope Village"), the Corrections Corporation of America ("CCA"), and the D.C. Department of Corrections ("DOC"), and states and alleges as follows:

## INTRODUCTION

1. Mr. Abdus-Sabur, an individual who uses a wheelchair, was in the custody of the Federal Bureau of Prisons ("BOP"), and was designated to serve his time in the Hope Village halfway house during the last five months of his sentence. Defendant Hope Village

1

was supposed to have provided a variety of services to increase Mr. Abdus-Sabur's ability to reintegrate into society as an ex-offender and a person with a disability. Mr. Abdus-Sabur was initially approved for residency in Hope Village and lived in Hope Village for two weeks. But on September 5, 2014 Defendant Hope Village refused to continue to house Mr. Abdus-Sabur because he used a wheelchair and had fallen while transferring from the shower of his residential unit to his wheelchair. As a result, Hope Village forced the BOP to place Mr. Abdus-Sabur in the custody of the District of Columbia Department of Corrections, which in turn assigned him to the Correctional Treatment Facility ("CTF") in the District of Columbia, where Mr. Abdus-Sabur served the remaining five months of his prison sentence. The CTF is operated by the Corrections Corporation of America and is run under contract for the D.C. Department of Corrections.

2. When Mr. Abdus-Sabur was incarcerated in the CTF from September 2014 through the end of January 2015, Mr. Abdus-Sabur was mistreated by CCA and its staff, who refused to provide Mr. Abdus-Sabur a reasonable accommodation to use an accessible shower within the CTF. Mr. Abdus-Sabur requested that he be permitted to use a shower in the CTF that has a bench to prevent him from falling or otherwise hurting himself while cleaning himself. CCA denied this request and, as a result, forced Mr. Abdus-Sabur to shower while sitting in a chair that was not stable or tethered in a way that would prevent him from injuring himself. Consequently, from September 2014 to January 2015, Mr. Abdus-Sabur fell out of the chair in the shower on approximately 10 separate occasions, causing him to suffer injuries that could have easily been avoided by the granting of a reasonable accommodation.

3. As a result of the disability discrimination that he suffered at the hands of Hope Village, CCA and DOC, Mr. Abdus-Sabur brings this action under the Rehabilitation Act of 1973, Section 504, as amended, 29 U.S.C. § 794, the Fair Housing Act, as amended, 42 U.S.C. §§ 3601 et seq., the Americans with Disabilities Act, 42 U.S.C. § 12131-12134, and the D.C. Human Rights Act §§ 2-1401.01 et seq.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as Mr. Abdus-Sabur alleges violations of the Rehabilitation Act, the Fair Housing Act, and the Americans With Disabilities Act. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction of Mr. Abdus-Sabur's claims under the D.C. Human Rights Act.

5. This Court has personal jurisdiction over all three Defendants, as they either reside in the District of Columbia and/or conduct business in the District of Columbia that is related to the factual allegations at issue in this action.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, all of the acts complained of occurred in Washington, D.C.

## THE PARTIES

7. Mr. Abdus-Sabur is an adult individual over the age of eighteen, a United States citizen, and a resident of the State of Maryland. Mr. Abdus-Sabur is a person with a disability within the meaning of the Rehabilitation Act, the Fair Housing Act, and the D.C. Human Rights Act. Due to a 2002 shooting that left him quadriplegic, Mr. Abdus-Sabur cannot walk or move his body up to his chest, which substantially limits one or more of his

major life activities. As a result, Mr. Abdus-Sabur regularly uses a wheelchair for mobility purposes.

8. Defendant Hope Village, Inc. is a privately owned entity that owns, leases, manages and/or operates a Residential Reentry Center ("RRC"), also known as a halfway house facility, at 2840 Langston Place, SE, Washington, DC 20020. Defendant Hope Village contracts with the BOP to provide halfway house placement for federal offenders in the District of Columbia.

9. Defendant Corrections Corporation of America ("CCA") is a Maryland corporation with its principal place of business in Nashville, Tennessee. CCA is the nation's largest owner and operator of privatized correctional and detention facilities in the United States. CCA does business in the District of Columbia by operating the CTF under a contract with the D.C. Department of Corrections.

10. Defendant D.C. Department of Corrections ("DOC") is an agency of the District of Columbia, with administrative headquarters at 2000 14th Street, N.W. in Washington, D.C. The DOC operates the CTF at 1901 E Street S.E. in Washington, D.C. by and through its contractor the CCA.

**FACTUAL ALLEGATIONS**

11. In 2002, in in Richmond, VA, Mr. Abdus-Sabur was shot multiple places in his body, including at the top of his spine. As a result of the injuries he suffered in the 2002 shooting, Mr. Abdus-Sabur has been quadriplegic and has used a wheelchair to move and live as independently as possible.

12. In 2011, the Eastern District of Virginia sentenced Abdus-Sabur to a prison term of 70 months for a non-violent offense. (Mr. Abdus-Sabur later received good time credits that reduced his prison sentence to substantially less than 70 months). The BOP placed Mr. Abdus-Sabur in BOP facilities, first in Rochester, Minnesota, and later in Springfield, Missouri.

### A. Hope Village's Discrimination Against Mr. Abdus-Sabur

13. As his release date approached, Mr. Abdus-Sabur's goals included pre-release placement in a halfway house to ease his transition into the community. Placement in a halfway house is encouraged by the BOP and would have been particularly useful in helping Mr. Abdus-Sabur readjust to the community by providing contacts and opportunities at organizations aimed at assisting residents and by providing Mr. Abdus-Sabur with a safe environment as he reintegrated into the community.

14. Depending on the length of his sentence, a federal prisoner can be considered for pre-release placement at a halfway house for up to twelve months at the end of his sentence under 18 U.S.C. § 3624.

15. In general, placement in a halfway house provides a residential environment for individuals nearing the ends of their sentences. A halfway house assists them with job placement and procuring a permanent residence, as well as providing other forms of counseling to help them transition from federal prison into the community.

16. In 2014, Mr. Abdus-Sabur became eligible for pre-release placement in a halfway house, and he requested placement in a halfway house. Mr. Abdus-Sabur made this request because he desired to live in a residential neighborhood, where he could adjust to

living with a disability outside of the institutional context and learn to do everyday activities for himself.

17. In or prior to August 2014, the BOP referred Mr. Abdus-Sabur for pre-release placement at Hope Village, a halfway house in the District of Columbia, for the last several months of his prison term. In August 2014, Mr. Abdus-Sabur was accepted by Hope Village to begin his stay in the Hope Village halfway house.

18. Because it is a privately owned corporation that contracts with the BOP to operate a halfway house facility in the District of Columbia, Hope Village must comply with applicable national, state, and local anti-discrimination laws, such as the Rehabilitation Act, the Fair Housing Act, and the D.C. Human Rights Act.

19. Residents at Hope Village are responsible for their own medical care, and can travel within the community via public or private transportation for necessary medical care.

20. Likewise, residents of Hope Village utilize both public and private transportation to attend religious services at their desired houses of worship.

21. Residents of Hope Village are permitted to bring personal belongings into Hope Village.

22. While residents of Hope Village eat communally when they are on the premises, they are responsible for their own meals while at jobs, doctors' appointments, or elsewhere in the community.

23. When appropriate, residents of Hope Village may stay after the end of their sentence terms in order to avoid homelessness.

24. Mr. Abdus-Sabur understood and expected that while living at Hope Village, he would be able to take advantage of the counselors at Hope Village who would assist him with finding job opportunities and alternative living arrangements after his sentence was complete, and that these counselors would provide him with contacts and opportunities at organizations that assist persons with re-acclimating to the District of Columbia community.

25. Upon his arrival at Hope Village, Mr. Abdus-Sabur was assigned to live in one of the apartment units at Hope Village that was designed to be accessible for people who use wheelchairs.

26. Soon after his arrival, Mr. Abdus-Sabur fell on two occasions while he was transferring from the shower of his residential unit back into his wheelchair, and required medical treatment for the injuries that he suffered.

27. Instead of working with Mr. Abdus-Sabur to determine how Hope Village could help Mr. Abdus-Sabur transfer more safety from the shower back to his wheelchair and live more independently, Hope Village quickly evicted Mr. Abdus-Sabur on September 5, 2014, and forced him to enter the Correctional Treatment Facility in the District of Columbia. As a result, Mr. Abdus-Sabur remained at the CTF from September 5, 2014 until January 30, 2015, when he was released from the CTF.

28. Before he was evicted by Hope Village, a Hope Village staff person informed Mr. Abdus-Sabur that Hope Village believed that Mr. Abdus-Sabur was too much of a liability for the halfway house because his disability could result in him suffering an injury and could relatedly result in legal action against Hope Village.

7

29. Mr. Abdus-Sabur was denied housing at Hope Village and access to its services, facilities, programs, and benefits based on his disability. But for his disability, Mr. Abdus-Sabur would have been allowed to continue to live at Hope Village and would have been able to utilize the services, facilities, programs, and benefits provided there. In addition, but for Hope Village's actions, he would have been able to live in a more free and appropriate setting during the last months of his prison term, instead of remaining in a correctional facility where he lacked the freedom and opportunities that he would have had at Hope Village.

30. As a result of Hope Village's discriminatory action, Mr. Abdus-Sabur has suffered injury and damages.

**B.     Discrimination by CCA and DOC Against Mr. Abdus-Sabur**

31. On or around September 5, 2014, Mr. Abdus-Sabur returned to the CTF in the District of Columbia, which was operated by CCA through a contract with the DOC.

32. Over the next five months, Mr. Abdus-Sabur was subjected to disability discrimination by CCA, DOC, and their agents (collectively "D.C. Defendants"), as they refused to grant a reasonable accommodation to Mr. Abdus-Sabur so that he could shower in the CTF without suffering bodily injuries.

33. On approximately 10 occasions from September 2014 to January 2015, Mr. Abdus-Sabur was forced by the D.C. Defendants to shower while sitting in a flimsy plastic chair that was not stable and, as a result, fell off of the chair and suffered bodily injuries.

34. Soon after he arrived at the CTF in September 2014, Mr. Abdus-Sabur made a request to CTF staff for a reasonable accommodation to use an accessible shower within the CTF that had a bench for him to sit stably.

35. Mr. Abdus-Sabur explained to CTF's staff that with the benefit of a shower that has a bench, he would not fall or otherwise hurt himself when he showered.

36. Unfortunately, CTF did not grant Mr. Abdus-Sabur's request for a reasonable accommodation, causing Mr. Abdus-Sabur to be denied a safe and accessible place to shower at the CTF and causing Mr. Abdus-Sabur to suffer repeated injuries that could have easily been avoided.

37. As a result of the D.C. Defendants' disability discrimination against Mr. Abdus-Sabur, Mr. Abdus-Sabur has suffered injury and damages.

38. Mr. Abdus-Sabur was released from the CTF on January 30, 2015.

39. Mr. Abdus-Sabur is currently living at the Kensington Nursing and Rehab Center in Kensington, Maryland, a suburb of Washington, DC.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE REHABILIATION ACT, 29 U.S.C. § 794
### Against Hope Village

40. Plaintiff re-alleges paragraphs 1 through 39 above and incorporates them as if fully set forth herein.

41. Defendant Hope Village violated the Rehabilitation Act by excluding Mr. Abdus-Sabur from participation in, and denying him the benefits of, a program receiving federal financial assistance, as Hope Village refused to provide Mr. Abdus-Sabur with participation in and access to the programs and activities of Hope Village solely based on his disability, including assistance with job placement, assistance with procuring a permanent residence, assistance with contacting organizations aimed at assisting residents, and other

9

forms of assistance and counseling to help Mr. Abdus-Sabur transition from federal prison into the community.

42. As described above, Defendant Hope Village evicted Mr. Abdus-Sabur from Hope Village because of Mr. Abdus-Sabur's use of a wheelchair and Hope Village's concern that Mr. Abdus-Sabur might injury himself again due to his disability and take legal action against Hope Village.

43. As a direct and proximate result of Hope Village's unlawful discriminatory actions, Mr. Abdus-Sabur has suffered injury, including physical injury, mental anguish, indignity, humiliation, and emotional distress.

## COUNT II
### VIOLATION OF THE FAIR HOUSING ACT, 42 U.S.C § 3604(f)
### Against Hope Village

44. Plaintiff re-alleges paragraphs 1 through 39 above and incorporates them as if fully set forth herein.

45. Defendant Hope Village's conduct violated the Fair Housing Act: (a) by discriminating in the rental of a dwelling and/or making unavailable a dwelling because of Mr. Abdus-Sabur's handicap or disability, in violation of 42 U.S.C. § 3604(f)(l); (b) by discriminating against Mr. Abdus-Sabur in the terms, conditions, or privileges of a rental dwelling on the basis of a handicap or disability, in violation of 42 U.S.C. § 3604(f)(2); and (c) by discriminating against Mr. Abdus-Sabur in the provision of services or facilities in connection with a dwelling on the basis of handicap or disability, in violation of 42 U.S.C. § 3604(f)(2), including, but not limited to, evicting him from Hope Village on the basis of his handicap or disability and denying him participation in the activities described in Count I.

46. Hope Village further violated the Fair Housing Act by refusing to make reasonable accommodations in its rules, policies, practices, and/or services in violation of 42 U.S.C. § 3604(f)(1), (2), and (3)(B).

47. For the purpose of 42 U.S.C. § 3604(f), Mr. Abdus-Sabur is a person, a renter, a person residing or intending or intending to reside in a dwelling after it is rented or made available, or a person associated with a renter or a person renting or residing in the dwelling.

48. Upon information and belief, the unit that Mr. Abdus-Sabur was evicted from remained available to other current or future residents of Hope Village.

49. As a direct and proximate result of Hope Village's unlawful discriminatory actions, Mr. Abdus-Sabur has suffered injury, including physical injury, mental anguish, indignity, humiliation, and emotional distress.

**COUNT III**
**VIOLATION OF THE FAIR HOUSING ACT, 42 U.S.C § 3604(c)**
**Against Hope Village**

50. Plaintiff re-alleges paragraphs 1 through 39 above and incorporates them as if fully set forth herein.

51. Defendant Hope Village's conduct violated the Fair Housing Act, 42 U.S.C. § 3604(c), by making or causing to made a statement with respect to the rental of a dwelling that indicated, limitation, or discrimination based on handicap or disability or an intention to make such a preference, limitation, or discrimination, as Hope Village's agent(s) told Mr. Abdus-Sabur orally that he was being evicted by Hope Village because of his use of his wheelchair could cause him to suffer injuries at Hope Village.

## COUNT IV
## VIOLATION OF THE D.C. HUMAN RIGHTS ACT § 2-1402.21(d)
### Against Hope Village

52. Plaintiff re-alleges paragraphs 1 through 39 above and incorporates them as if fully set forth herein.

53. Defendant Hope Village's conduct violated the D.C. Human Rights Act by: (a) denying the rental of a dwelling and/or making unavailable a dwelling because of Mr. Abdus-Sabur's disability, in violation of the D.C. Human Rights Act § 2-1402.21(d)(1); (b) by discriminating against Mr. Abdus-Sabur in the terms, conditions, or privileges of a rental dwelling on the basis of a disability, in violation of the D.C. Human Rights Act § 2-1402.21(d)(2); and (c) by discriminating against Mr. Abdus-Sabur in the provision of services or facilities in connection with a dwelling on the basis of handicap or disability, in violation the D.C. Human Rights Act § 2-1402.21(d)(2), including, but not limited to, evicting him from Hope Village on the basis of his handicap or disability and denying him participation in the activities described in Count I.

54. For the purpose of the D.C. Human Rights Act § 2-1402.21(d), Mr. Abdus-Sabur is a person, a renter, a person residing or intending or intending to reside in a dwelling after it is rented or made available, or a person associated with a renter or a person renting or residing in the dwelling.

55. As a direct and proximate result of Hope Village's unlawful discriminatory actions, Mr. Abdus-Sabur has suffered injury, including physical injury, mental anguish, indignity, humiliation, and emotional distress.

## COUNT V
## VIOLATION OF THE D.C. HUMAN RIGHTS ACT §§ 2-1402.21(a)(5)
### Against Hope Village

56. Plaintiff re-alleges paragraphs 1 through 39 above and incorporates them as if fully set forth herein.

57. Defendant Hope Village's conduct violated D.C. Human Rights Act § 2-1402.21(a)(5) by making or causing to made a statement with respect to the rental of a dwelling that indicated, limitation, or discrimination based on handicap or disability or an intention to make such a preference, limitation, or discrimination, as Hope Village's agent(s) told Mr. Abdus-Sabur orally that he was being evicted by Hope Village because of his use of his wheelchair could cause him to suffer injuries at Hope Village.

## COUNT VI
## VIOLATION OF THE REHABILIATION ACT, 29 U.S.C. § 794
### Against CCA and DOC

58. Plaintiff re-alleges paragraphs 1 through 39 above and incorporates them as if fully set forth herein.

59. Defendants CCA and DOC violated the Rehabilitation Act by denying Mr. Abdus-Sabur the benefits of and/or subjected him to discrimination under a program or activity receiving federal financial assistance, as Defendants CCA and DOC refused to provide Mr. Abdus-Sabur with a reasonable accommodation that Mr. Abdus-Sabur requested. The reasonable accommodation that Mr. Abdus-Sabur requested and was denied was the ability to use a shower in the CTF that has a bench that would prevent him from falling or otherwise hurting himself while cleaning himself.

60. As a direct and proximate result of CCA and DOC's unlawful discriminatory actions, Mr. Abdus-Sabur fell in the CTF shower on about 10 occasions between September 2014 and January 2015, causing him to suffer injury, including physical injury, mental anguish, indignity, humiliation, and emotional distress.

## COUNT VII
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT,
## 42 U.S.C. § 12131-12134
## Against CCA and DOC

61. Plaintiff re-alleges paragraphs 1 through 39 above and incorporates them as if fully set forth herein.

62. Defendants CCA and DOC violated Title II of the Americans With Disabilities Act, 42 U.S.C § 12131-12134, by denying Mr. Abdus-Sabur the benefits of and subjecting him to discrimination in services, programs or activities of a public entity by reason of his disability, as Defendants refused to provide Mr. Abdus-Sabur with a reasonable accommodation that Mr. Abdus-Sabur requested. Mr. Abdus-Sabur had requested that he be permitted to use a shower in the CTF that has a bench that would prevent him from falling or otherwise hurting himself while cleaning himself, but the reasonable accommodation was denied by Defendants.

63. As a direct and proximate result of CCA and DOC's unlawful discriminatory actions, Mr. Abdus-Sabur fell in the CTF shower on about 10 occasions between September 2014 and January 2015, causing him to suffer injury, including physical injury, mental anguish, indignity, humiliation, and emotional distress.

## COUNT VIII
### VIOLATION OF THE D.C. HUMAN RIGHTS ACT § 2-1402.73
### Against DOC

64. Plaintiff re-alleges paragraphs 1 through 40 above and incorporates them as if fully set forth herein.

65. Defendant DOC, a District agency or office, violated the D.C. Human Rights Act § 2-1402.73 by refusing to provide its facility, service, or program, or benefit to Mr. Abdus-Sabur on the basis of his disability.

66. As a direct and proximate result of DOC's unlawful discriminatory actions, Mr. Abdus-Sabur fell in the CTF shower on about 10 occasions between September 2014 and January 2015, causing him to suffer injury, including physical injury, mental anguish, indignity, humiliation, and emotional distress.

## COUNT IX
### VIOLATION OF THE D.C. HUMAN RIGHTS ACT § 2-1402.73
### Against CCA

67. Plaintiff re-alleges paragraphs 1 through 39 above and incorporates them as if fully set forth herein.

68. Defendant CCA, a corporation that operates the CTF under a contract with DOC, violated the D.C. Human Rights Act § 2-1402.67 by obtaining a permit, license, franchise, benefit, exemption, or advantage from government of the District of Columbia and failing to fully comply with the provisions of the D.C. Human Rights Act. In particular, CCA refused to provide its facility, service, or program, or benefit to Mr. Abdus-Sabur on the basis of his disability.

69. As a direct and proximate result of CCA unlawful discriminatory actions, Mr. Abdus-Sabur fell in the CTF shower on about 10 occasions between September 2014 and January 2015, causing him to suffer injury, including physical injury, mental anguish, indignity, humiliation, and emotional distress.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that the Court enter judgment:

- A   Declaring that Defendants have violated the Rehabilitation Act, the Americans With Disabilities Act, the Fair Housing Act, and the D.C. Human Rights Act;

- B.   Enjoining Defendants from violating the Rehabilitation Act, the Americans With Disabilities Act, the Fair Housing Act, and the D.C. Human Rights Act in the future.

- C.   Awarding Plaintiff both compensatory and punitive damages, including damages for mental anguish and physical injury, in an appropriate amount as determined by the jury;

- D.   Ordering Defendant to pay Plaintiff's cost, attorneys' fees, and expenses associated with this action.

- E.   Granting such other and further relief as this Court deems necessary and proper.

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a trial jury as to each and every claim to which he is so entitled.

January 29, 2016                                          Respectfully submitted,

/ s / Peter Romer-Friedman
Peter Romer-Friedman (D.C. Bar # 993376)
Deborah Golden (D.C. Bar # 470578)
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle, NW
Suite 400
Washington, DC  20036
Tel: (202) 319-1000
Fax: (202) 319-1010
peter_romerfriedman@washlaw.org


*Counsel to Plaintiff*